## THE TRANSFER NO. 11.

### (District Court, E. D. New York. January 4, 1904.)

1. COLLISION—STATIONARY TUG AND DRIFTING SCHOONER—FAILURE OF TUG TO MOVE.

A transfer tug, with a car float on each side, which was lying with her engines still off Ward's Island, to permit a schooner coming through Hell Gate to pass, *held* in fault for a collision between such schooner and one of the floats, where, although she was rightfully on that side of the channel, and stopped in due time, the schooner was becalmed and helpless, owing to the dying out of the wind, and drifted for a considerable time before striking the float, giving the tug, which saw her condition, time to have moved out of her way.

In Admiralty. Suit for collision.

Alexander & Ash, for libelants.

Henry W. Taft and Mr. Greenough, for claimants.

THOMAS, District Judge. At 6 p. m. on June 3d the schooner Mary Buckley, loaded, was passing through Hell Gate, and came in collision with Transfer No. 11, with car floats on each side, at a place about 125 feet off a point between Negro Point and the dock on Ward's Island, where the float was lying, with her engines still, to allow the schooner to pass. When the schooner reached Hogs Back the wind died out, and with a heading towards Hogs Back, and at a distance of about 125 feet therefrom, she began to drift and did drift through the Gate, and could not be controlled. The captain of the schooner states that the Transfer came along the southerly side of the channel, and thence went on a diagonal course across the river to the place where the accident happened. The master of the schooner contends that the Transfer could have gotten out of the schooner's way either by backing or going further to starboard, or that it could have kept to the southerly side of the channel, and thereby passed under the schooner's stern. The tide was strong flood, running four or five knots an hour, and the Transfer kept on the northerly side of the river all the way from Sunken Meadows, to avail herself of the slack water which exists between the wharf easterly of Negro Point and such Point, and to avoid the strong flood tide, whose course is across the channel southerly shortly after leaving Negro Point.

The witnesses for the Transfer state that on such a tide it would be impossible or impracticable for the Transfer, by taking the southerly side of the channel, to take her tow through the Gate, or to the point above Pott's Cove, where the helper was waiting to assist. It is concluded that the Transfer in approaching Negro Point had for some time been on the northerly side of the channel, and that, with due reference to safe navigation, she had a right to pursue that course. Therefore it is concluded that in the first instance the Transfer was where she had a right to be.

The next and final question is whether she did what requisite prudence required when she saw the helpless condition of the schooner. The master of the Transfer saw that the schooner was becalmed at a distance determined to be some 125 feet off Hogs Back, and that she would be carried past the place of the accident at about the same distance from the shore, with a tendency, however, on the part of the tide to carry her southerly, and out of the way of the floats. Did due care require that the master of the Transfer should measure her distance from Hogs Back, her probable distance from Ward's Island when she came up to him, and did such care require him to go back earlier than he did? Although it has been found that the Transfer had the right to keep up next to Ward's Island, yet her pilot saw the schooner coming, and had plenty of time to go back with the tide, and get out of the schooner's way, for he must have seen that, if he stayed where he was, she would not clear him. If he could not reasonably make that calculation when the schooner was of Ward's Island, yet the schooner did

not suddenly come upon him, but for some time helplessly drifted towards him. Although he had done well in the beginning, he could then have gone back towards the dock until the schooner shortly reached a point where the drift of the tide, leaving the receding shore of Ward's Island, would take her out of the way towards the southerly side of the channel. But he answers this by saying that the schooner was not drifting upon his float, but that he was so far to starboard that she would have cleared if a sudden gust of wind had not sent her towards Ward's Island when she was opposite the float. It is concluded that he was mistaken in this; at least he is not supported in it by the preponderance of evidence. In any case, he should have taken pains to guard against such movement of an ungovernable ship. The fact is that he calculated upon too small a margin for the schooner passing, and did not early enough awaken to the fact that she was coming too close to him, or would come upon him before he went back, as he might easily have done upon the flood tide. Had he gone back, the schooner must certainly have been carried to the southward, and have cleared him. Upon this ground alone the libelants should have a decree.